Firefoam Sales Company v. Commissioner.
Firefoam Sales Co. v. Commissioner
Docket Nos. 9516, 10211, 12033.
United States Tax Court
1947 Tax Ct. Memo LEXIS 241; 6 T.C.M. (CCH) 406; T.C.M. (RIA) 47097; April 22, 1947
*241 Charles B. McInnis, Esq., 735 Transportation Bldg., Washington 6, D.C., for the petitioner. Stanley L. Drexler, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies as follows: Declared
Value
Excess-Profits
Excess
Docket No.
Year
Income Tax
Tax
Profits Tax
9516
1942 $ $ 249.76
$15,959.50
10211
1943
1,087.06
16,773.35
12033
1944
2,972.19
197.21
757.72 The only issue for decision is whether the Commissioner erred in disallowing a part of the deduction claimed for officers' compensation including payments made to a pension trust. Findings of Fact The petitioner is a Pennsylvania corporation organized in 1919. Its returns for the years in question were filed with the collector of internal revenue for the twenty-third district of Pennsylvania. The petitioner is engaged in the business of selling fire fighting equipment and systems in a large area including Pittsburgh and surrounding territory. The business was formerly conducted by Earle Himmelrich as a sole proprietorship. It was taken over by the petitioner in 1919. The personal services *242 of Himmelrich and George W. Armstrong were largely responsible for the success of the petitioner's business. Those two men, through training and long experience, have become experts in determining what kind of fire fighting equipment a plant should have, and in designing and installing such a system. Their advice and services in these respects are sought and given in almost all work done by the petitioner. They also check the operation of all installations and instruct employees of the client in the use of the equipment. Himmelrich and Armstrong were the only executive officers of the petitioner during the taxable years. They devoted their entire time to the business of the petitioner and spent many extra hours and worked extra hard at their duties during the taxable years. Himmelrich was a director, secretary-treasurer, and general sales manager of the petitioner during the taxable years. He also made sales. Armstrong was a director and president of the petitioner during that period. He had in addition an exclusive sales area for which he was responsible and during the latter part of the period took over the sales territory of another salesman who went into the Navy. There was *243 one other director. The petitioner employed two or three people in its office and two or three truck drivers. It had a few salesmen on a full time commission basis. It also paid commissions to three or four other men who sold some of its products but who also sold products of others. It owned only a small amount of fixed assets. The outstanding stock of the petitioner during the taxable years consisted of 471 shares owned by 14 individuals. Himmelrich owned 263 shares, Armstrong owned 50 shares, another stockholder owned 50 shares, and the remaining shares were owned in smaller units. The following table shows certain information in regard to the petitioner Net Income
Ratio of
After
Officers'
Officers'
Dividends
Compen-
Officers' Compensation
Compen-
Paid
sation to Year
Net Sales
Armstrong
Himmelrich
sation
per Share
Net Sales
1937
$103,532.88
$5,265.36
$7,298.55
$ 860.43 $ 7.50
12.13%
1938
76,445.21
4,798.96
6,955.24
(2,701.20)
.50
15.37%
1939
83,286.60
4,524.13
6,994.02
575.60 .50
13.83%
1940
99,580.92
6,049.65
9,333.12
1,693.26 6.50
15.69%
1941
175,302.19
7,867.23
11,822.48
6,480.74 7.50
11.23%
1942
288,834.27
11,009.05
21,991.53
10,679.99 10.00
11.08%
1943
308,431.39
11,634.60
24,674.00
12,242.21 7.75
11.80%
1944
212,516.07
9,915.62
21,499.84
568.23 1.50
14.78%
*244 Parts of the salaries shown in the above table represent bonuses earned by these two officers under an established profit-sharing plan participated in by other employees and a small part of the salaries for 1942 and 1944 represents contributions by the petitioner to an insurance or pension plan likewise participated in by other employees. The remaining and larger portion of the salaries was made up of basic salaries duly authorized by the board of directors of the petitioner. The Commissioner, in determining the deficiencies, allowed a total annual deduction for officers' salaries of $20,000 representing $12,000 for Himmelrich and $8,000 for Armstrong. He explained that the excess over that amount was excessive and unreasonable. A reasonable allowance for salaries and other compensation for personal services actually rendered to the petitioner for the years in question was as follows: Year
Himmelrich
Armstrong
1942
$21,991.53
$11,009.05
1943
24,674.00
11,634.60
1944
21,499.84
9,915.62
Opinion MURDOCK, Judge: The Commissioner has disallowed a substantial part of the compensation paid by the petitioner to its two executives during the taxable years. *245 He explained that the part disallowed was excessive and unreasonable and he argues in addition that the effect of these salaries was to distribute the earnings of the corporation between these two men, leaving only a small amount for the other stockholders. Himmelrich was the principal stockholder of the business and Armstrong was one of the next largest stockholders, but there were other stockholders who took an active interest in the business. The salaries were not in any way based upon stockholdings. Salaries for earlier years had to be cut because earnings were reduced. The fixed assets used in the business were almost negligible and only a few persons were employed. The real question in this case is to determine whether the services of these two men were reasonably worth the amount which was paid to them during these years. Sales increased tremendously during these war years. The petitioner seems to concede that it did not have to hunt for customers because there was a great demand for its products. The evidence shows, however, that the duties of these two executive officers increased tremendously during this period. The sales were made largely to industrial plants and usually *246 involved a whole system of fire protection or at least a system of fire protection for some particular portion of a plant which had its own fire problem. The two officers had to familiarize themselves with each plant and the problem which it presented. They then suggested a proposed fire fighting system and if the client approved it they designed it, obtained the materials, supervised installation, checked its efficiency, and instructed employees of the purchaser in its use. This was to a large extent a personal service business. Himmelrich had formerly operated it as a sole proprietorship. It is not unusual, in such a situation, for a large part of the earnings to go to the persons furnishing the personal services which were largely responsible for those earnings. The adjustment which the Commissioner made finds no support in the record and apparently was a purely arbitrary one made simply because the salaries were considerably higher than they had been in recent prior years. The sales, the duties, responsibilities, and efforts of these men were very much greater during these war years than they had been previously. The evidence fairly preponderates in support of the petitioner's *247 contention that the entire amounts paid in these years represented reasonable compensation for the personal services actually rendered to the petitioner by these two men. Decision will be entered under Rule 50.